IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO.  2:18-cr-20406-JTF |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SAM BLUE, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## POSITION PAPER

COMES NOW, the defendant, Sam Blue, by and through his attorney of record, Howard B. Manis, pursuant to *§6A1.2* of the Sentencing Guidelines and this Court's local rules regarding sentencing, does hereby file the following paper regarding sentencing:

1. Defendant and Counsel have received and reviewed the pre-sentence Report filed in this action.

2. Defendant has no objections to the facts as alleged in Part A. The Offense section of the PSR. However, as it relates to those facts, Defendant Blue would state the following:

    a. Paragraph 8 – Defendant Blue did not participate in the planning of the robbery nor was he privy to any discussions regarding the detention of Taylor's family.

    b. Paragraphs 18-21 – Defendant does not dispute that he provided the gate code to Davis. However, Blue was unaware of the plan executed by Davis and the others including kidnapping, restraint, beating or torturing of Cain.

>   Blue neither participated in any discussions regarding the plan nor was provided any information from the co-conspirators or others that either a kidnapping, restraint, beating or torturing was contemplated or would take place.

3. Defendant has no objections to the Offense Level Calculations.

4. Defendant has no objections to the Criminal History Calculation of zero.

5. Defendant has no objections to the Offender Characteristics Section of the PSR.

**II.** **_18 U.S.C. §3553(a)_ FACTORS DEPARTURES AND VARIANCES**

In *U.S. v. Booker*, *125 S. Ct. 738 (2005),* the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. The other factors set forth in *18 U.S.C. §3553(a)* must also be considered in fashioning the appropriate sentence. See *Booker*, *125 S Ct. at 790* (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determinations). These factors include (1) nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from future crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to

any victims of the offense. *Id*; *Booker, 125 S. Ct. at 764*; *U.S. v. Menyweather, 431 F. 3d 962 (9th Cir. 2005)*.

In support of the *18 U.S.C. §3553(a)* factors defendant would respectfully state the following:

1. Mr. Blue is a sixty-one (61) year old African American male who is a life-long Memphian.

2. He is currently married to Mildred Odessa and was previously married to Lena Smith until her untimely death in 2013. Lena Smith died after a battle with Cancer in 2013. Prior to her death, he provided care to his sick wife. At the time of her illness, they were caring for their grandson. After she passed, he continued to raise him as best he could. He has been a father figure for his nieces and nephews. He stood in when their fathers did not. He frequently attended events at Hutchinson's with his niece and basketball games with his nephews from junior high to high school.

3. He has three siblings, two of which like Mr. Blue are in law enforcement. He has one biological child, Tarshea Blue, age 28. He also has one stepdaughter, Tamika Gales, age 39 from his first marriage. He raised both children together as his own. He maintains a good relationship with both children and has been in his stepdaughter's life since she was two (2) years old.

4. The defendant served in the United States Marine Corps and the Reserve from August 10, 1977, to June 22, 1987. He received an honorable discharge, and his rank at separation was Sergeant (E-5). His primary specialty was as a machine gunner. The defendant earned a rifle expert badge, a humanitarian service medal,

a sea service deployment ribbon, a rifle sharpshooter badge, and a good conduct medal. He was last assigned as a small unit leader at the school of infantry. He saw tours of duty in Okinawa, Japan for roughly two (2) years total during his military service.

5. Mr. Blue is well liked and friendly. He is a loving grandfather who adores his grandchildren. Mr. Blue is a Christian who was baptized at Union Valley Baptist Church. He is generous, loving, and cares tremendously for his family and friends. He frequently made donations to the United Way and when his wife developed breast cancer, he gave money to research and participated in the fundraising walks that occurred once a year.

6. Mr. Blue graduated from South Side High School in 1976. After high school he entered the military instead of going to college. He received significant specialized training, as a result of his military tour and law enforcement experience.

7. After leaving the military, Mr. Blue held numerous jobs until ultimately finding his calling as a police officer with the Memphis Police Department in 1995. He remained with the MPD until his retirement in December 2018 following this offense. Mr. Blue worked as a uniform patrol officer for the first two years of his career with the MPD. He then worked in the community policing unit for seven years. Mr. Blue spent the rest of his career working as a crime scene investigator.

8. During his over two (2) decades on the Memphis Police Department, he served as a CIT (Crisis Intervention Team) officer and an FTO (Field Training Officer). He was selected, along with six other officers, to open a CoAct (Community Policing

Unit) in Whitehaven Community Center. He took at risk young men and women and through sports tried to show them a different path to a productive life. Some of the children he helped went to college and some joined the military. He was also frequently asked to speak with different at-risk youth groups from third graders up to high schoolers. In addition, he was tasked with presenting a class to The Citizens Police Academy at all the precincts around the city. He took great pride in those achievements. He met people that told me him his work changed them. One young lady told him, he took her to Juvenile court and that changed her from her bad ways. Another told him that he arrested her father and she hated him and would never forgive me. When she saw him again, she said she was sorry for feeling that way because her father continued to abuse her mother and she realized he was just doing my job.

9. Mr. Blue has no criminal history and no arrest history whatsoever prior to this offense. He has always been a hard worker and have never been without a job.

10. Mr. Blue accepted responsibility almost immediately after detection and never wavered in his acceptance of responsibility. He admitted his guilt to officers upon his arrest, entered a guilty plea to the charges, cooperated with law enforcement and did not file any motions either attempting to minimizing his role or otherwise seeking to mitigate his criminal conduct.

11. For the vast majority of his life, Mr. Blue has lived a productive and law-abiding existence.

12. While the criminal conduct is horrible, and resulted in serious bodily injury and violence, Mr. Blue never participated in any violent behavior whatsoever. Mr.

      Blue was not present during any of the violent criminal contact including robbery, assault, or kidnapping. Mr. Blue's criminal conduct was limited to him providing assistance to Mr. Davis, in order to identify the location of potential targets for Davis and provided items to support Davis' plan to appear to be law enforcement.

13. Being that Mr. Blue has no prior criminal history and this offense was one of opportunity based upon his position with the MPD, it is highly unlikely that Mr. Blue would commit any criminal activity in the future. The risk of recidivism is extremely low.

14. Mr. Blue is sixty-one (61) years old, retired, and by all information aside from his conduct in this offense, he has lived his life as an upstanding citizen.

## **DEPARTURES / VARIANCE**

A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. A "variance" by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based upon application of the other statutory factors in *18 U.S.C. Sec. 3553(a)*. A "variance" outside the guideline range provided for in the Guidelines Manual should occur after consideration of all relevant departure provisions. *Gall v. United States, 128 S. Ct. 586, 596 (2007).*

A sentencing court must follow the three-step process set forth by *Gall*. (Id.) First, the court must properly determine the guideline range. Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the guideline range. Third, the court must consider all the factors set forth in *18 U.S.C.*

*Sec. 3553(a)* as a whole, including whether a variance – a sentence outside the advisory guideline system – is warranted. *Id*.

Mr. Blue would submit that the following represent factors both individually and in coordination with each other as the basis for "departures" and "variance" that apply to the facts of her case.

1. **Role in the offense** - minor or minimal participant – the guidelines explicitly authorize an adjustment where the defendant played a mitigating role in the offense. *USSG Sec. 3B1.2* (authorizing a two-level adjustment for minor role and a four-level departure for a minimal role). Sentencing courts may vary downward substantially or depart more than four levels on this basis as well. *U.S. v. Pauley, 511 F.3d 468 (4th Cir. 2007)*. This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity. *USSG Sec. 3B1.2 0 Commentary 3(A)*. A defendant who is accountable under *Sec. 1B1.3 (Relevant Conduct)* only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. *Id.* This case presents as both limited function and lack of personal gain. *USSG Sec. 3B1.2 0 Commentary 3(C).*

    The determination whether to apply subsection (a) or (b), or an intermediate adjustment is based on the totality of the circumstances and involves a determination that is heavily defendant upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the Court should consider the following non-exhaustive lit of factors:

(i) The degree to which the defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the defendant participated in planning or organizing the criminal activity;

(iii) The degree to which the defendant exercised decision making authority or influenced the exercise of decision-making authority;

(iv) The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibilities and discretion the defendant had in performing those acts;

(v) The degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under the guideline. *Id.*

Mr. Blue's role in the offense meets each and every one of the factors set forth above. He had little to no understanding of the scope and structure of the criminal activity. While he knew Davis was using the information to steal from drug dealers, he was not privy to the methodology being used and the violence associated with the criminal conduct. He had no involvement in the planning or organizing of the criminal activity. He exercised no decision-making authority or influence over the decision makers. His actions were specifically at the direction

of others and limited to providing information and equipment at the direction of Defendant Davis. He stood only nominal financial benefit from the activity. There is little doubt that Mr. Davis was the mastermind behind the criminal conduct and fostered a friendship with Mr. Blue in furtherance of his criminal goals. Clearly, the results of the criminal conduct were horrendous. However, while foreseeable, Mr. Blue did not truly contemplate the full extend his actions could allow Mr. Davis and others to commit. Based upon everything else we know about Mr. Blue's life and character, had Mr. Blue known or truly ever considered the scope of Mr. Davis' criminal conduct, Mr. Blue would not have provided any assistance whatsoever and likely tried to dissuade the conduct from occurring.

As such, a four (4) level departure is appropriate in this matter.

To the extent the Court does not believe Mr. Blue qualifies for the departure pursuant to *USSG Sec. 3B1.2*, Mr. Blue would respectfully state that his role was limited and did not involve any of the violent behavior which significantly increased his guideline range. This would be an appropriate factor to consider for a variance to the ultimate guideline range. While the results of his illegal activity were extraordinary, his actual role was significantly limited to providing information ultimately used with horrible and violent results. There is no indication or proof that Mr. Blue was made aware, either before, during or after, until his arrest of the scope of the violence and methodology used by Davis. While this does not amount to any sort of defense, it is relevant evidence to consider the scope of his conduct and the danger to which he might impose in the

future. Mr. Blue would submit, that these facts take this case "outside of the heartland" of cases considered by the guidelines. Mr. Blue is being treated under the guidelines the same as an officer who participated in the planning and criminal activity of kidnapped, assault and inflicted permanently injured on a citizen. Mr. Blue's actual misconduct while reprehensible in no way equates to the violent, dangerous, and malicious conduct for which he is being sentenced.

2. **Work History – (Sec. 5H1.5)** – Mr. Blue has maintained full time employment since his graduation from high school except for the period of time that he honorably served in the military. He served as a Memphis Police Officer for over two decades.

3. **Lack of criminal history** – Mr. Blue has no prior criminal history.

4. **Military History (Sec. 5H1.11) –** Mr. Blue served in the United States Marine Corps and the Reserve from August 10, 1977, to June 22, 1987. He received an honorable discharge, and his rank at separation was Sergeant (E-5). His primary specialty was as a machine gunner. The defendant earned a rifle expert badge, a humanitarian service medal, a sea service deployment ribbon, a rifle sharpshooter badge, and a good conduct medal. He was last assigned as a small unit leader at the school of infantry. He saw tours of duty in Okinawa, Japan for roughly two (2) years total during his military service. Military service may be relevant in determining whether a departure is warranted. Based upon his almost ten (10) years of service which included tours of duty in Okinawa, Japan for roughly two (2) years, his service to our country warrants consideration for a downward departure.

He was honorably discharged and decorated. He earned a rifle expert badge, a humanitarian service medal, a sea service deployment ribbon, a rifle sharpshooter badge, and a good conduct medal.

5. **Aberrant Behavior** – while Defendant's conduct does not satisfy the requirements under *USSG Sec. 5K2.20* for a downward departure for aberrant behavior in light of the fact that his conduct involved multiple incidents, this factor is still an appropriate consideration for a variance. This criminal conduct arose out of a friendship with Anthony Davis. Mr. Blue used his job as a Memphis Police officer to obtain information and equipment to further Mr. Davis criminal conduct. While Mr. Blue did not actively participate in any of the violence, assaults, robberies, or kidnapping, as an officer of the law, Mr. Blue should not have involved himself whatsoever. He knew better and should have understood that such violent criminal conduct was possible and quite likely to occur. Mr. Blue will speak to this issue at sentencing in hopes of explaining how he allowed this to occur and continue. It appears besides the relationship with Mr. Davis, Mr. Blue's life could only be described as exemplary, law abiding and appropriate. All of these undisputed facts are in stark contrast to the criminal conduct. See generally, *United States v. Howe, 543 F.3d 128 (3rd Cir. 2008)* (affirming probationary sentence and temporary home confinement for wire fraud despite an eighteen to twenty-four month Guideline range, where appellate court construed district court to have termed the offense an "isolated mistake" in the context of Howe's otherwise long and upstanding life, despite the government's assertion Howe waged a two-year campaign to cover-up a six figure fraud on the

Air Force). Mr. Blue's conduct represents an "isolated mistake" from his otherwise exemplary life.

6. **Age of Defendant** – Under the advisory guidelines, age is "ordinarily" not relevant pursuant to USSG §5H1.1, but may be so in unusual cases or in combination with other factors. Yet, the Commission has found "recidivism rates decline relatively consistently as age increases." See *U.S. Sentencing Comm'n, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004)*. Post- *Booker* and *Rita*, a sentencing court may consider defendants' age under § 3553(a). . Rita v. United States, 551 U.S. 338 (2007). While Mr. Blue is by no means elderly. He is 61 years old. "Recidivism rates decline relatively consistently as age increases," and defendants, "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants." *See US SENTENCING COMM'N MEASURING RECIDIVISM: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, 28 (2004)*. U.S. v. Dusenberry, 9 F.3d 110 (6th Cir. 1993) (downward departure granted due to defendant's age and medical condition – removal of both kidneys requiring dialysis three times a week).

    The Department of Justice has found that "management problems with elderly inmates, ... are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible

physical environment." See Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Dept. of Justice National Institute of Corrections, 9, 10 (2004). The report notes that first time offenders are "easy prey for more experienced predatory inmates." Id. at 10. The elderly have been defined throughout the report as age 50 or older.

There can be little doubt that Mr. Blue will face enormous difficulties in prison. He will be a likely target of other inmates. He will be vulnerable to attacks, have difficulty with social relationships in the jail, and easy prey for the more experienced predatory inmates he is likely to encounter. At his advanced age, he will be unable to adequately defend himself from these attacks from younger, much healthier inmates.

7. **Recidivism**– based upon Mr. Blues age, the fact this was a first offense, the lack of any criminal history whatsoever, and his otherwise outstanding life, the likelihood of recidivism is remote, if not miniscule. As such, a departure would be appropriate to ensure a sentence sufficient but not greater than necessary is provided. It is highly unlikely Mr. Blue represents any danger whatsoever to society or would ever commit a future crime.

8. **Vulnerability to victimization or abuse in prison** – Based upon Mr. Blue's prior employment as a Memphis Police Officer and the nature of the offense, he likely faces becoming a victim of violence within the prison. *Koon v. U.S.*, 518 U.S. 81 (1996) (no abuse of discretion to grant downward departure to police officers convicted of civil rights violation due to their vulnerability in prison); As a retired police officer, Mr. Blue will be a target for attacks and violence by other

inmates who hold a grudge or blame officer misconduct for their misfortune. Mr. Blue will face great difficulty forming relationship in jail which could provide protection or assistance as well. He likely will find himself alone, isolated and exposed. At his advanced age, he will be unable to defend himself against other inmates.

9. **Defendant is law abiding citizen who just did a truly dumb thing** – Outside of this offense, Mr. Blue has led an otherwise exemplary and law-abiding existence. He was a decorated serviceman who was honorable discharged from the United States Martine Corp. Retired after two decades as a Memphis Police Officer and had no prior criminal history. The conduct set forth herein was simply "dumb" and inconsistent with everything else in his sixty-one (61) year old life. *U.S. v. Howe*, 543 F.3d 128 (3 Cir. 2008) (affirming probationary sentence and temporary home confinement for wire fraud despite an 18-24 month guideline range, where appellate court construed district court to have termed the offense an "isolated mistake" in the context of Howe's otherwise long and entirely upstanding life); *U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish"); *U.S. v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008) (time served imposed for possessing a sawed-off shotgun, which appeared to have been prompted by economic pressures of unemployment by a first-time offender who had throughout his 15-year marriage worked at lots of jobs to get education for his six children, even when

they lived in homeless shelters, and whose personal investment in his children's care was attested to by a school teacher and a pediatrician).  By no means does characterizing his conduct as "dumb" infer it is not misguided and serious.  His conduct was reprehensible and difficult to understand.  That being said, it was stupid to provide the information to a known criminal under any circumstances and even more idiotic to not consider the possible results and dangers.

10. The guideline sentence conflicts with the Sec. 3553 directive to impose a sentence "Sufficient but not greater than Necessary."  While this Court is bound to consider the guidelines when crafting an appropriate sentence, the Court cannot impose a sentence that is greater than necessary to accomplish the sentencing goals set forth in *Sec. 3553(a).  Kimbrough v. United States, 552 U.S. 85, 91 (2007).*  While a period of incarceration is necessary.  The calculated guideline range is greater than necessary to achieve the goals of sentencing and *Sec. 3553*.  Mr. Blue respectfully requests a sentence of no more than one hundred twenty (120) months of incarceration, before considering any departure made pursuant to any motion made by the government on his behalf.  A sentence of no more than one hundred twenty (120) months is a substantial sentence.  That sentence sends the appropriate message to society regarding the seriousness of the offense and just punishment.  As set forth above, it is highly unlikely Mr. Blue will ever recommit.  As such, he does not present a danger to the community.  The sentence would accurately reflect the nature of the actual conduct of Mr. Blue as compared to the others involved in the case.  As a first-time offender who has never served a

single day in jail, a period of incarceration not exceeding one hundred twenty (120) months is a just punishment under the circumstances.

11. It is anticipated that Mr. Blue will receive a motion on his behalf. If for some reason currently not known to the defense that motion is not made, the Court should consider his cooperation in the overall investigation of this and related cases for departure and variance. Mr. Blue's cooperation reflects a reduced likelihood of recidivism and is a beneficial part of his history and character supporting a non-guideline sentence under Sec. 3553(a)(2)(C), even where the government does not file a 5K motion. See *U.S. v. Fernandez*, 443 F.3d 19 (2d Cir. 2006) (a judge must consider "the history and characteristics of the defendant" and should consider that a defendant made efforts to cooperate, even if those efforts did not yield a government motion for a departure); *U.S. v. Lazenby*, 439 F.3d 928, 933-34 (8 Cir. 2006)(noting that booker made the prosecution's th determination of the cooperation factor less controlling, and holding that district court failed to take Booker's change into account); *U.S. v. Doe*, 213 Fed.Appx. 660, 663 (10 Cir. Jan. 12, th 2007)(unpub.)(holding that district court should address cooperation as part of its §3553(a) analysis even in absence of a 5K1.1 motion when raised by the defendant); *U.S. v. OchoaRamos*, 2008 WL 2062341, at *3 (E.D.Wis. 2008)(noting the ability to consider cooperation with the government as evidence of defendant's character under §3553(a) beyond a reduction under §3E1.1, even in the absence of a §5K motion from the prosecution); *U.S. v. Cruz*, 2008 WL 4501951, at *3 (E.D.Wis. 2008)(same); U.S. v. Murray, 2005 WL 1200185 (S.D.N.Y. May 20, 2005) (unpub.) (fact that

defendant testified for the government at a time when he had nothing to gain provides support for his genuine contrition); *U.S. v. Hubbard*, 369 F. Supp. 2d 146, 150 (D. Mass. 2005) (suggesting court can correct for government's bad faith in not making §5K1.1 motion under §3553(a)(2)(C)).

Assuming a motion is made at sentencing, counsel will address the extent a further departure is warranted based upon the nature and quality of the assistance provided.

WHEREFORE PREMISES CONSIDERED, Defendant respectfully requests that this Honorable Court consider all of the above when determining a sentence sufficient but not greater than necessary.

> Respectfully submitted,
>
> */s/ Howard B. Manis*
> Howard B. Manis
> 40 South Main, Suite 1700
> Memphis, TN 38103
> (901) 523-1222
> hmanis@cochranfirm.com
> Attorney for Defendant

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Appearance has been served on the following party via electronic mail, this the    day of May 2020.

David Pritchard
Assistant United States Attorney
PSC Coordinator / CHIP Coordinator
167 N. Main Street, Suite 800, Memphis, TN  38103

*/s/ Howard B. Manis*

Howard B. Manis